UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:24-cr-223-FDW |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| ROGER TRENT MELCHOR | ) | 18 U.S.C. § 1343 |
| | ) | |

THE UNITED STATES ATTORNEY CHARGES:

At the specified times and at all relevant times:

### Introduction

1. From in or around July 2020 through at least May 2021, Defendant ROGER TRENT MELCHOR executed a scheme to fraudulently obtain Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") funds (collectively, "relief funds").

2. MELCHOR, using false financial information, submitted, or caused to be submitted, false and fraudulent loan applications to the United States Small Business Administration ("SBA") and a third-party participating lender ("SBA Approved Lender 1") to obtain approximately $32,000 in relief funds.

3. MELCHOR engaged in this scheme while on federal supervised release.

### Defendant and Related Parties

4. MELCHOR was a resident of Indian Trail, North Carolina, within the Western District of North Carolina.

5. MELCHOR claimed to operate a sole proprietorship known as "RSTR Sanitizing."

### The Economic Injury Disaster Loan Program

6. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

1

7. The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed the SBA to offer EIDL funding to business owners negatively affected by COVID-19. Through the SBA online portal, EIDL applicants could submit personal and business information in support of an EIDL application.

8. An EIDL application included a paragraph where the applicant affirmed that the information submitted was true and correct under the penalty of perjury and other applicable criminal statutes. The application process involved filling out data fields relating to the size of the affected business entity, the ownership of the business, the number of employees, and gross revenues realized in the 12 months prior to COVID-19's impact on the national economy.

9. The EIDL application information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the business was eligible to receive in the form of a loan. The SBA Office of Disaster Assistance, an executive branch agency, had authority over all loans created and disbursed under the EIDL program. EIDLs were solely funded by the SBA and disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

10. EIDL proceeds could only be used for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. Covered expenditures included fixed debts, payroll, accounts payable, and other ordinary and necessary financial obligations that the business cannot meet as a direct result of the pandemic. EIDL proceeds could not be used to replace lost sales or profits or to expand a business. If the applicant also obtained a PPP loan, the EIDL funds could not be used for the same purpose as the PPP funds.

## The Paycheck Protection Program

11. The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating SBA approved lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

12. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was generally required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

13. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

## The PPP and EIDL Fraud Scheme

14. From in or around July 2020 through at least May 2021, MELCHOR engaged in a scheme to defraud the SBA and SBA Approved Lender 1 of approximately $32,000 to unjustly enrich himself by obtaining relief funds by means of materially false and fraudulent pretenses, representations and promises.

15. It was part of the scheme that MELCHOR knowingly submitted and caused to be submitted PPP loan and EIDL applications and supporting documents to the SBA and SBA Approved Lender 1.

16. The PPP loan and EIDL applications and supporting documents contained materially false statements and misrepresentations regarding, among other things, MELCHOR and his businesses' gross income and gross revenue. MELCHOR also attached a fabricated tax return in support of the PPP application.

17. For example, on or about May 1, 2020, MELCHOR submitted and caused to be submitted an application for a $20,833.00 PPP loan for himself, which was transmitted through SBA Approved Lender 1's electronic portal. MELCHOR falsely represented that he had a gross income of $124,384.00. MELCHOR also submitted and caused to be submitted a fabricated 2019 tax return with the application.

18. MELCHOR also falsely represented on the PPP application that within the last 5 years he had not "commenced any form of parole or probation."

19. MELCHOR caused more than $32,000 in fraudulently obtained relief funds to be disbursed to bank accounts he controlled. MELCHOR did not use these funds for authorized purposes.

3

## COUNT ONE

### 18 U.S.C. § 1343
### (Wire Fraud)

20. The United States Attorney realleges and incorporates by reference herein all of the allegations contained in paragraphs one through nineteen of this Bill of Information, and further alleges that:

21. From in or around July 2020 through at least May 2021, in Union County, within the Western District of North Carolina, and elsewhere, the defendant,

**ROGER TRENT MELCHOR,**

with the intent to defraud, did knowingly and intentionally devise the above described scheme and artifice to defraud the SBA and SBA Approved Lender 1 and obtain money from the SBA and SBA Approved Lender 1 by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice, did cause to be transmitted by means of wire communications in interstate commerce any writing, signal, or sound, in that, among other things, the defendant sent and caused to be sent electronic communications and electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

4

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in Count One of this Bill of Information;

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the approximate amount of $33,033.00, such amount constituting the proceeds of the violations set forth in this Bill of Information.

DENA J. KING
UNITED STATES ATTORNEY

_____
ERIC A. FRICK
SPECIAL ASSISTANT UNITED STATES ATTORNEY